**WO**                                                                                                           SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Clyde Morris,                    )    No. CV 05-0515-PHX-JAT (JRI)
                                 )
            Plaintiff,           )    **ORDER**
                                 )
vs.                              )
                                 )
Dora Schriro, et al.,            )
                                 )
            Defendants.          )
                                 )
_____  )

Plaintiff Clyde Morris filed this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC). (Doc. #1.) Defendants[1] moved to dismiss on the ground that Plaintiff failed to exhaust his administrative remedies and for summary judgment. (Doc. #95.) The motion is fully briefed. (Doc. ##113, 114, 127, 130.)

The Court will grant the motion to dismiss in part and deny it in part and will deny the motion for summary judgment.

**I.     Background**

Plaintiff's Amended Complaint raised two counts; the Court dismissed Count II. (Doc. ##12, 64.) In Count I, Plaintiff, who suffers from diabetes mellitus, alleged deliberate indifference to his medical needs by Defendants in that they (1) failed to adequately monitor

---

[1] The remaining Defendants are Schriro, Director of ADC; Gal, Deputy Warden at East Unit; Greeley, Facility Health Administrator; Valeros, a doctor; and Ortiz, Kirkham, Martin, and McDonald, nurses.

Plaintiff's blood sugar levels; (2) failed to diagnose and provide adequate, timely care for injuries to and infections of Plaintiff's feet; (3) failed to diagnose and provide adequate, timely care for Plaintiff's eye problems; (4) failed to provide Plaintiff with an appropriate individualized meal plan; and (5) failed to provide Plaintiff with education about his illness, particularly his nutritional needs. Plaintiff further alleged that, despite being diagnosed with proliferative diabetic retinopathy, he had received only two eye exams in the last five years. Plaintiff continued to suffer from blurred vision and other visual impairments. Plaintiff also contended that medical staff had never examined his feet although he continued to suffer from numbness. And Plaintiff asserted that he never had a urine micro-albumin test to check for early diabetic kidney damage, nor had he ever been to the dental clinic to be evaluated for gum disease. He claimed Defendants had changed the feeding schedule for diabetic inmates, which had a detrimental effect on his ability to manage his blood sugar levels. Plaintiff stated he suffered incidences of low blood sugar (hypoglycemia), which often resulted in partial seizures.

## II.   Exhaustion of Administrative Remedies

### A.   Legal Standard

Under the Prison Litigation Reform Act (PLRA), a prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies are exhausted. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 919-21 (2007). Defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide

disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B.     Parties' Contentions

Although Defendants concede that Plaintiff exhausted his remedies as to his claim that diabetics be turned out first for lunch, they contend that, as to most of the claims in the Amended Complaint, Plaintiff failed to exhaust his administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a).  (Doc. #95 at 7.)  In support, they submit the declaration of James Baird, Medical Program Manager from November to August 2003, Physician Supervisor at Arizona State Prison Complex (ASPC)-Eyman and ASPC-Florence from August to March 2004, and Medical Program Manager since March 2004; and Department Order (DO) 802, Inmate Grievance System. (Id., Ex. B., Baird Decl. ¶ 1, 2.)  Under DO 802, failure to appeal through the Director's level is a failure to exhaust the administrative remedies.  (Baird Decl. ¶ 3.)  According to Baird, ADC Health Services maintains a computerized database of all medical grievance appeals submitted to the Director's level. (Id. ¶ 4.)  Baird attests that he searched Plaintiff's medical grievance appeals submitted between February 14, 2003 and February 14, 2005 that pertain to treatment for diabetes and determined that Plaintiff submitted a grievance claiming that diabetic inmates should be turned out first for lunch as well as breakfast. (Id. ¶ 5.)  Plaintiff argues that he exhausted as to all issues.  Both parties rely on documents, including grievances, attached as exhibits to the Amended Complaint.

On August 26, 2004, Plaintiff submitted a Health Needs Request (HNR) asking to see his doctor to discuss a different diabetic plan because his eating time had been changed, he was permitted to do finger sticks only twice per week, and his blood sugar was dropping too low before he would get to eat lunch.[2]  (Doc. #12, Ex. A.)  On August 30, Ortiz responded

---

[2] According to Defendants, prior to August 2004, both Type 1 insulin-dependent and Type 2 non-insulin-dependent diabetic inmates on supplemental insulin, housed at East Unit, were turned out first for the lunch meal. (Doc. #95 at 4.)  In August 2004, the procedure

- 3 -

1  to the HNR stating:

2  > Meal time was <u>not</u> changed by medical. According to our records you have checked your blood sugar only 1 time this month. If you feel your blood sugar is low, utilize glucose tabs or your store. You can also ask the officer to bring you to medical.

(<u>Id.</u>) (emphasis in original).

On September 3, Plaintiff filed an Inmate Letter complaining that insulin-dependent diabetics needed to be called out first at lunch, that glucose tabs are for emergencies only, and that he should not have to eat his own food to manage his glucose levels, especially because he was allowed only two finger sticks per week. (<u>Id.</u>, Ex. B.) Plaintiff was advised to proceed to the next level of the grievance process. (<u>Id.</u>, Ex. C.) Plaintiff submitted his formal Grievance to the grievance coordinator, reiterating the facts and position in his Inmate Letter and stating that "medical has also stopped me from checking my blood sugar levels from twice a day to twice a week." (<u>Id.</u>) On October 12, Plaintiff filed an Inmate Grievance Appeal, directed to Schriro, stating that he had not received a timely response to his grievance; he complained about treatment for his diabetes and "feeding" and referred to attached grievances. (<u>Id.</u>, Ex. E.)

In the meantime, Pinkstaff, the Facility Healthcare Manager, responded to the Grievance on October 6 and identified the two issues raised as "being called out for lunch first" and "being able to check your blood sugar level twice a day." (Doc. #95 at 6; Doc. #12, Ex. F.) Pinkstaff replied that Plaintiff was issued a snack bag and glucose tablets and that because Plaintiff does not take regular insulin, there would be no point in checking finger-stick glucose levels everyday—twice per week would be sufficient or any time Plaintiff felt ill. In addition, Pinkstaff suggested that Plaintiff ask his provider to change his insulin to a type that lasts 24 hours. (Doc. #12, Ex. F.)

Plaintiff then filed an addition to his Inmate Grievance Appeal in order to respond to Pinkstaff. (<u>Id.</u>, Ex. G.) Plaintiff disputed that he received a snack bag in the morning and

---

changed to a non-preferential rotation system whereby diabetic inmates were turned out for lunch with the non-diabetic inmates in their housing cluster. (<u>Id.</u>)

- 4 -

1 disagreed that he should use glucose tabs on a daily basis. (Id.) He also stated that there are 2 "several very important points to a diabetic checking his blood sugars before every meal" and 3 that this would help the diabetic control his diabetes and save ADC money in the long run. 4 (Id..) Schriro responded that "you are requesting diabetics to be first for lunch as well as 5 breakfast." (Id., Ex. H.) She also stated that the Clinical Pharmacist and Medical Program 6 Manager had reviewed the case and a "full treatment review has been recommended." (Id.)

7 Plaintiff argues that the "subject" line of his Inmate Letter states "'*Failure to provide* 8 *proper care for diabetics by DOC. and medical. . .* feeding times and finger sticks.'" (Doc. 9 #113 at 6; emphasis in Doc. #113.) He asserts that his complaint centered around his 10 inability to keep his blood sugar levels under control, which he attributed to the change in 11 feeding schedule, lack of finger stick checks, and required use of glucose tablets or food 12 purchased from the commissary. (Id.) He argues that his formal grievance reiterated his 13 claim that he was "not receiving proper medical care" and that his grievance to Schriro 14 concerned "improper medical care" and feeding schedules and referenced attached 15 grievances. (Id. at 6-7.) He points out that Pinkstaff responded to the request for daily 16 finger sticks and that Plaintiff supplemented his grievance to Schriro after receiving 17 Pinkstaff's response. Plaintiff argues that the claims regarding his care and treatment were 18 presented at every stage of the grievance process, that the claims that Defendants argue have 19 not been exhausted "are a natural extension of those complaints presented to prison officials 20 in his grievance," and that Schriro's response—that a full treatment review had been 21 recommended—shows that she recognized that Plaintiff's complaints addressed "the care and 22 treatment he was receiving for his diabetes as a whole." (Doc. #113 at 7-8.)

23 In their reply, Defendants argue that complaints about the lunch schedule did not 24 provide prison officials the "time and opportunity" to address the other numerous issues 25 raised in the Amended Complaint, and thus, Plaintiff failed to exhaust as to those matters. 26 (Doc. #127 at 3.) Valero, who files a separate reply, similarly argues that the grievance 27 procedure requires that inmates provide a description of the grievance, DO 802.11, and that 28 prison officials were not on notice that Plaintiff was complaining about anything other than

- 5 -

1 the feeding schedule and possibly the change in finger stick testing from twice daily to twice
2 weekly.  (Doc. #130 at 4.)

### C.     Analysis

Defendants admit that Plaintiff exhausted administrative remedies with regard to his claim about the lunch feeding time. (Doc. #127 at 2; Doc. #130 at 4.)  They argue, however, that the remaining claims were not exhausted.

First, the Court finds that Defendants have not met their burden to show that Plaintiff failed to exhaust remedies regarding the monitoring of blood sugar levels with the finger sticks. (Doc. #12 at 6.)   It is undisputed that Pinkstaff identified two issues in Plaintiff's Inmate Grievance—"being called out for lunch first" and "being able to check . . . blood sugar level twice a day"—and responded to both.  Pinkstaff did not refuse to respond to the finger stick issue on the ground that the informal grievance did not raise it. Although Plaintiff's October 12 Inmate Grievance Appeal does not mention the finger-stick issue, Plaintiff provides a supplemental document, also directed to Schriro, that raises the issue of monitoring blood sugar levels before every meal.  Defendants do not address Plaintiff's assertions regarding this supplemental document and therefore do not dispute Plaintiff's claim that he submitted it; in fact, Valeros appears to concede in his reply that Plaintiff exhausted as to the frequency of finger-stick testing. (Doc. #130 at 4.)  In Brown, the Ninth Circuit noted that the purpose of the PLRA exhaustion requirement is to afford prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case."  422 F.3d at 936 (citing Porter, 534 U.S. at 525).  The Court finds that Defendants were given the time and opportunity prior to this lawsuit to address the frequency of finger-stick testing.

However, the Court finds that Plaintiff did not exhaust remedies with regard to the other issues raised in the Amended Complaint.  "[T]he primary purpose of a grievance is to alert prison officials to a problem . . . ."  Jones, 127 S. Ct. at 923 (quoting Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004)); see also Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007).  The conclusory and vague statements that Plaintiff did not receive proper

- 6 -

medical care are inadequate to alert prison officials to specific claims of failure to diagnose and provide adequate, timely care for injuries to and infections of Plaintiff's feet and his eyes; failure to provide Plaintiff with an appropriate individualized meal plan or education about his illness, particularly his nutritional needs; alleged inadequate treatment for proliferative diabetic retinopathy and blurred vision and other visual impairments; or failure to conduct a urine micro-albumin test to check for early diabetic kidney damage or to evaluate him for gum disease.

Defendants have met their burden to demonstrate that Plaintiff failed to exhaust remedies as to claims other than the scheduling of lunch for diabetics and the frequency of finger-stick testing, and the Court will dismiss the additional claims. Because the Court is dismissing the additional claims, the Court will dismiss Kirkham, who is named as a Defendant only in paragraphs 28, 31, 44, and 48 of the Amended Complaint, which all involve dismissed claims. (Doc. #12.)

**III.    Summary Judgment**

       **A.    Legal Standards**

       **1.    Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The party against whom a summary judgment motion is directed need not file any contravening affidavits or materials but is entitled to denial of summary judgment where the moving papers are insufficient or on their face demonstrate the existence of a material issue of fact. Henry v. Gill Industries, 983 F.2d 943, 949 (9th Cir. 1994).

If the moving party meets its initial responsibility, the burden then shifts to the

1 opposing party who must demonstrate the existence of a factual dispute and that the fact in
2 contention is material, i.e., a fact that might affect the outcome of the suit under the
3 governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the
4 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
5 the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216,
6 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set forth specific facts
7 showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or
8 denials of [the party's] pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd.
9 v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish
10 a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual
11 dispute be shown to require a jury or judge to resolve the parties' differing versions of the
12 truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).
13 However, Rule 56(c) mandates the entry of summary judgment against a party who, after
14 adequate time for discovery, fails to make a showing sufficient to establish the existence of
15 an element essential to that party's case and on which the party will bear the burden of proof
16 at trial. Celotex, 477 U.S. at 322-23.

17 When considering a summary judgment motion, the court examines the pleadings,
18 depositions, answers to interrogatories, and admissions on file, together with the affidavits,
19 if any. Fed. R. Civ. P. 56(c). The evidence of the non-movant is "to be believed, and all
20 justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. However,
21 if the evidence of the non-moving party is merely colorable or is not significantly probative,
22 summary judgment may be granted. Id. at 249.

23     **2.. Medical Claim**

24 To prevail on a claim under the Eighth Amendment for prison medical care, a prisoner
25 must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d
26 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff
27 must show (1) a "serious medical need" by demonstrating that failure to treat the condition
28 could result in further significant injury or the unnecessary and wanton infliction of pain and

- 8 -

(2) the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (citations omitted). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096.

But mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Inadequate treatment due to malpractice or even gross negligence does not constitute an Eighth Amendment violation. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Moreover, differences in judgment between an inmate and prison medical personnel regarding an appropriate medical diagnosis or treatment are not enough to establish a deliberate-indifference claim. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

**B.    Parties' Contentions**

In their moving papers, Defendants argue that (1) they were not deliberately indifferent and (2) Plaintiff cannot show entitlement to injunctive relief because on July 1, 2006, ADC Health Services implemented a new comprehensive Diabetic Management Policy and Plaintiff cannot make a showing of facts that would support the ordering of specific treatment. (Doc. #95 at 11, 17.) In support, they submitted the declaration of James Baird (Doc. #96, Ex. A, Baird Decl.); numerous medical records (id., Attach. 1); and the Diabetic Management Policy (id., Attach. 2). However, Defendants withdrew the Baird declaration and struck paragraphs 4-40 from their Statement of Facts.[3] (Doc. #126.) They did not

---

[3] The Notice of Withdrawal was filed by Schriro, Gal, Greeley, Martin, McDonald, Kirkham, and Ortiz.

- 9 -

1  withdraw Attachment 1, the medical records.

2  Plaintiff responded before Defendants withdrew the Baird declaration.  Plaintiff
3  submitted a memorandum of law (Doc. #113); a statement of facts (Doc. #114); his own
4  declaration (id., Ex. A); the declaration of Nancy J. Griffis (id., Ex.B); and numerous medical
5  records and other documents.

6  Valeros filed his own reply, and the remaining Defendants filed a separate reply.
7  Schriro, Gal, Greeley, Martin, McDonald, and Ortiz now argue that although Baird's
8  declaration has been withdrawn, they are still entitled to summary judgment; they also file
9  a responsive statement of facts and objections to Plaintiff's statement of facts.  (Doc. #127
10 at 3; Doc. #128.)  Citing to Plaintiff's response, they argue that Schriro is not shown to have
11 involvement in Plaintiff's care and treatment other than her response to his grievance.  (Id.
12 at 4.)  Likewise, they argue that, even in the light most favorable to Plaintiff, the evidence
13 and allegations in Plaintiff's response fail to show that Gal, Greeley, Martin, McDonald, and
14 Ortiz were deliberately indifferent.  (Id. at 4-5.)

15 They further argue that Plaintiff shows no proof of injury and therefore makes no
16 showing of physical injury to support his claim for damages.  42 U.S.C. § 1997e(e); see also
17 Oliver v. Keller, 289 F. 3d 623, 629 (9th Cir. 2002).  In addition, they claim that a delay in
18 medical treatment must lead to further injury to constitute deliberate indifference and an
19 inmate must produce medical evidence to establish injury.  Shapley v. Nevada Bd. of State
20 Prison Com'rs, 766 F. 2d 404, 407 (9th Cir. 1985).  They assert that Plaintiff did not disclose
21 an expert and that Griffis' testimony lacks foundation and fails to demonstrate an actual
22 injury.  (Id. at 6-7.)  Finally, they claim that Plaintiff acknowledges that current diabetes
23 policies are substantially what he requested.  (Id.)

24 Valeros's reply includes his objections to Plaintiff's statement of facts (Doc. #129);
25 his own declaration (id., Ex. A. Valeros Decl.); excerpts from Plaintiff's deposition (id.); his
26 reply memorandum (Doc. #130); and Errata (Doc. #132).[4]  Among other things, Valeros

---

[4] The other Defendants file a Notice of Joinder stating that "to the extent such applies to them, they join in and adopt co-Defendant Valeros'" filings.  (Doc. #133.)

- 10 -

argues that there is no admissible evidence in the record to dispute his avowal that he did not delay, deny or interfere with Plaintiff's medical treatment. (Doc. #130 at 8; Valeros Decl. ¶ 25.) He also argues that Plaintiff produced no admissible evidence that he suffered any significant harm due to Valeros's alleged actions or inactions and that any other allegations of harm must be disregarded as unsupported by the requisite foundation and expert evidence. (Doc. #130 at 7; Valeros Decl. ¶ 22.)

### C. Analysis

First, the Court notes that Valeros obtained separate counsel before the Notice of Withdrawal of the Baird declaration was filed by Schriro, Gal, Greeley, Martin, McDonald, Kirkham, and Ortiz. But the declaration and statement of facts were submitted by all Defendants, and Valeros' reply documents appear to rely on his own declaration, not that of Baird. Also, Valeros filed no objection to the withdrawal of the declaration and request to strike the paragraphs in the Statement of Facts, and, in his "Response and Objections to Plaintiff's Statement of Facts, Valeros affirmatively asserts "*Defendants* withdrew the Declaration of James Baird on February 29, 2008." (Doc. #129 ¶ 7) (emphasis added). The Court finds that the Baird declaration was withdrawn and paragraphs 4-40 of the Statement of Facts stricken as to all Defendants.

After Defendants withdrew the Baird declaration and struck paragraph 4-40 of the Statement of Facts, their moving papers consisted of nothing but a three-paragraph Statement of Facts—establishing that Plaintiff is an inmate in the custody of ADC; he was housed at ASPC-Florence, East Unit at all times relevant to the case, and he has diabetes—and unexplained medical records. In their replies, they offer the Valeros declaration. The Court will deny the motion for summary judgment because Defendants fail to establish the absence of a genuine issue of material fact or to comply with the Local Rules of Civil Procedure.

The moving party bears the initial responsibility of presenting the basis for its motion for summary judgment and identifying those portions or the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Defendants cite no authority that would permit them to rely on Plaintiff's

1 responses to their now-withdrawn Statement of Facts and evidence to meet their own initial
2 burden on summary judgment.  In addition, Local Rule 56.1(a) provides that a party filing
3 a motion for summary judgment must file a statement, separate from the motion and
4 memorandum of law, setting forth each material fact on which the party relies; that each
5 material fact must be set forth in a separately numbered paragraph and must refer to a
6 specific admissible portion of the record supporting the fact; and that failure to submit a
7 separate statement of facts in the proper form "may constitute grounds for the denial of the
8 motion."  LRCiv 56.1.  Defendants' remaining Statement of Facts and evidence are
9 insufficient to demonstrate the absence of a genuine issue of material fact and the remaining
10 Statement of Facts does not comply with the Local Rule.  The party against whom a
11 summary judgment motion is directed is entitled to denial of summary judgment where the
12 moving papers are insufficient.  Henry, 983 F.2d at 949.

13      Moreover, the Court will not consider the Valeros declaration because it was filed
14 only after Plaintiff responded to the motion.  "[W]here new evidence is presented in a reply
15 to a motion for summary judgment, the district court should not consider the new evidence
16 without giving the [non-]movant an opportunity to respond."  Provenz v. Miller, 102 F.3d
17 1478, 1483 (9th Cir. 1996) (citing Black v. TIC Inv. Corp., 900 F.2d 112, 116 (7th Cir.
18 1990)).  Defendants do not even offer an explanation for the late submission of this evidence.
19 **IT IS ORDERED:**

20      (1)  Defendants' motion to dismiss (Doc. #95) is **granted in part and denied in**
21 **part** as follows:

22           (a)  the motion is **denied** as to the claim regarding the frequency of finger-
23 stick testing, and

24           (b)  **granted** as to all other claims in the Amended Complaint.  The additional
25 claims are dismissed without prejudice for failure to exhaust administrative remedies.

26      (2)  Defendant Kirkham is dismissed.

27      (3)  Defendants' motion for summary judgment (Doc. #95) is **denied**.

28      (4)  The remaining claims are the scheduling of lunch for diabetics and the frequency

of finger-stick testing.

DATED this 25th day of March, 2008.

James A. Teilborg
United States District Judge